## CADWALLADER v. SHOLL et al.
### No. 10748.

United States Court of Appeals
District of Columbia Circuit.

Argued March 15, 1951.

Decided July 12, 1951.

On Rehearing Argued Nov. 16, 1951.*

As Amended Feb. 15, 1952.

Writ of Certiorari Denied June 2, 1952.
See 72 S.Ct. 1061.

Prettyman, Circuit Judge, dissented.

Ralph F. Berlow, Washington, D. C., with whom, William T. Hannan, Washington, D.C., was on the brief, for appellant.

Ward E. Boote, Assistant Solicitor, Department of Labor, Employees' Compensation Bureau, Washington, D. C., with whom George Morris Fay, United States Attorney at the time the brief was filed, and Joseph M. Howard, Assistant United States Attorney, Washington, D. C., were on the brief, for appellee Britton. Charles M. Irelan, Washington, D. C., appointed United States Attorney subsequent to the

* Original opinion vacated.

time brief was filed, also entered an appearance for appellee Britton.

G. A. Chadwick, Jr., Washington, D. C., for appellees Sholl and National Casualty Company.

Before EDGERTON, PRETTYMAN, and BAZELON, Circuit Judges.

On Rehearing.

EDGERTON, Circuit Judge.

This appeal is from a judgment dismissing a claim for workmen's compensation. Contact with flour, in claimant's employment as a baker, caused dermatitis which disabled her from July, 1944 to October, 1946. Her employer's insurer paid her compensation, without claim or award, for that time. In December, 1946 she suffered a recurrence of dermatitis which wholly disabled her from January, 1947 to the time of the hearing before the Deputy Commissioner in 1949. In November, 1947 she filed a claim to compensation for this recurrence of disability. The Deputy Commissioner rejected the claim as not timely filed and the District Court sustained his action.

Section 13(a) of the Longshoremen's and Harbor Workers' Compensation Act,[1] 33 U.S.C.A. § 913(a), 44 Stat. 1432, provides that the right to compensation is "barred unless a claim therefor is filed within one year after the injury" or one year after the last payment made without an award.

■ The Deputy Commissioner found that between appellant's first attack of dermatitis and its "recurrence" there was an interval during which she "was free of the symptoms of the said dermatitis and she was able to work." We understand the finding to mean that during this interval she did not appear to have dermatitis. The Deputy Commissioner did not expressly find and the record does not show whether appellant (1) resumed work during the interval and thereby brought about the recurrence of the disease[2] or (2) did not re-

sume work, in which case the second attack of the disease was a consequence of the previous work that had caused the previous attack. On either hypothesis we think appellant's claim was timely because it was filed within one year after the disease recurred.

■ "The term 'injury' means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury * * *." 44 Stat. 1425, 33 U.S.C. § 902(2). Having in mind the basic purpose of the Compensation Act we think this means that any attack, whether an initial one or one following a sympton-free period, if it arises naturally out of the employment is an "injury". There is nothing in the Act to suggest a contrary intention.

In our opinion Pillsbury v. United Engineering Co., 342 U.S. 197, 199, 72 S.Ct. 223, 224, does not bear on the question. It determines only that when an employee consciously suffers injury on a given date, but suffers no disability until a later date, the injury and not the disability starts the running of the one-year period of limitation on the filing of claims. The Supreme Court said: "Each of the claimants here was immediately aware of his injury, received medical treatment, and suffered continuous pain. We are not here dealing with a latent injury or an occupational disease." The present appellant suffered her second attack of dermatitis in December, 1946, became wholly disabled in January, 1947, and filed her claim in November, 1947. Therefore even if the Pillsbury rule were extended to occupational diseases, its distinction between injury and disability would still be immaterial here.

Except in connection with the relatively small matter of the statutory one-week waiting period we do not see that our understanding of the law tends, as the dissenting opinion suggests, to prevent or reduce compensation in future cases.

1. Applicable in the District of Columbia as a workmen's compensation act. D.C. Code (1940) § 36–501, 45 Stat. 600.

2. Perhaps this is implicit in the finding that she "was able to work."

Though we formerly thought otherwise, we now think the question is one of law for the courts to decide. We think O'Leary v. Brown-Pacific-Maxon, 340 U. S. 504, 71 S.Ct. 470, 95 L.Ed. 483, is not to the contrary. There the Supreme Court held that the Deputy Commissioner did not exceed his authority in awarding compensation for the death of an employee who was drowned, on the island of Guam, in attempting to rescue other men. The employee, who was off duty, started his rescue attempt from a recreation area that the employer maintained for the use of employees. The question was whether the drowning of a particular employee was sufficiently related to a particular employment in a particular place so that it might be said to arise "out of and in the course of" the employment. The Deputy Commissioner treated this question as one of "fact" and the Supreme Court agreed. The Court said: "We hold only that rescue attempts such as that before us are not necessarily excluded from the coverage of the Act as the kind of. conduct that employees engage in as frolics of their own. * * * The conclusion concerns a combination of happenings and the inferences drawn from them. In part at least, the inferences presuppose applicable standards for assessing the simple, external facts. Yet the standards are not so severable from the experience of industry nor of such a nature as to be peculiarly appropriate for independent judicial ascertainment as 'questions of law.'" 340 U.S. at pages 507–508, 71 S. Ct. at page 472. The question in that case, though partly generic, had peculiar specific elements. Few questions are more purely generic than the one now before us: does the term "injury" in the one-year clause of the Compensation Act include recurrence of disease? Both the Deputy Commissioner and the District Court treated the question as generic. Neither treated it as a question of "fact". No one contends that appellant's recurrence of dermatitis had specific elements that might differentiate it for present purposes from other recurrences of occupational diseases. We think that in this case the question is quite severable from the experience of industry and peculiarly appropriate for independent judicial ascertainment as a question of law.

Reversed.

PRETTYMAN, Circuit Judge (dissenting.)

I think my brethren are in error in their disposition of this case. Because the matter is of major importance in the administration of the workmen's compensation law, I state my reasons.

I agree that the generic meaning of the word "injury", as it appears in the statute,[1] is a question of law for the courts to decide; and, therefore, the courts must determine whether that term includes, generally speaking, a recurrence or repetition of an occupational disease. I disagree with the conclusion of the court that all so-called "recurrences" are injuries within the meaning of the statute.

So-called recurrences are of at least two types. (1) A person contracts a disease from a specific cause. After a time the symptoms disappear and the person is apparently cured. Some time later the disease reappears, even though the person has had no further contact with the original or any other recognized cause. (2) The same initial incidents occur: A person contracts a disease from a specific cause; after a period of time the symptoms disappear and the person is apparently cured. But some time later this person is again in contact with a cause for the disease and again contracts the disease. My view is that there is a second "injury" in the latter type of case but not in the first type.

The plan of the statute, so far as is pertinent here, appears from four sections. One[2] provides that "Compensation shall be payable * * * in respect of disability * * * of an employee, but only if the

1. Sec. 13(a) of the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1432 (1927), 33 U.S.C.A. § 913(a); made applicable to the District of Columbia by Act of May 17, 1928, 45 Stat. 600, D.C.Code § 36–501 (1940).

2. 44 Stat. 1426 (1927), 33 U.S.C.A. § 903(a).

disability * * * results from an injury". Another [3] provides: " 'Disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." Another section [4] provides that "The term 'injury' means accidental injury * * * arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment". The fourth pertinent section [5] provides that "The right to compensation for disability * * * shall be barred unless a claim therefor is filed within one year after the injury, * * * except that if payment of compensation has been made without an award on account of such injury * * * a claim may be filed within one year after the date of the last payment."

Thus, it is clear that "disability" and "injury" are not synonymous in this statute. Disability is incapacity. To be compensable it must result from an injury. The statute says that "injury" means injury, which is not a particularly helpful definition. But, clearly enough, an injury has two features. There is an act or an event, and there is a damage or a detriment to somebody or something. A person falls off a ladder and breaks his leg; he is injured. As a result of his broken leg he cannot work; he is disabled. The statute, by definition, limits "injury" to two types, "accidental injury" and "occupational disease or infection", and that feature of the definition is helpful. Beyond question, such an "injury" contemplates an external act, event or thing and a damage arising therefrom. The cases and the textbooks treat of all sorts of acts, events and things —a finger or foot slipping into a machine, unusual weight-lifting, fumes, heat, cold— and of all sorts of damages—broken bones, tuberculosis, cardiac strain, arteriosclerosis, etc. But, whatever the particular circumstances, consideration of all the cases makes it clear enough that an identifiable external cause is a characteristic of accidental injury and of occupational disease.

The statute requires that the employee must file a claim within a year "after the injury". This provision is jurisdictional [6] to consideration and allowance of the claim. The basic date is the date of the "injury".

The statutory concepts are plain upon the face of the statutory provisions I have quoted. Compensation is paid for the disability, the incapacity to work, not for the injury. But the time for filing the claim begins at the date of the injury, not at the date of the disability.

These concepts cause no great difficulty in ordinary cases. A man lifts too great a weight and strains his heart, a fact at once fully known to him, but he continues to work. He has been injured but not disabled. His heart condition gets worse, and he cannot work. He is disabled. He will be compensated for the time he is unable to work, but his claim must be filed within a year of the day he strained his heart.[7]

If an employee is injured and as a result is disabled and continues disabled for a long period of time, he is deemed to have been injured only once. He must file his claim within a year of the date of that injury (unless he is paid without an award). Otherwise he is barred from compensation no matter how long he is disabled.

That a resultant incapacity to work is interrupted rather than continuous does not seem to me to be material to the principle involved in the statutory requirement that the period of limitation begin at the date of the injury. If the injury involves an accident, and the resultant incapacity is interrupted by periods of capacity to

---

3. 44 Stat. 1424 (1927), 33 U.S.C.A. § 902(10).

4. 44 Stat. 1424 (1927), 33 U.S.C.A. § 902(2).

5. 44 Stat. 1432 (1927), 33 U.S.C.A. § 913(a).

6. Young v. Hoage, 1937, 67 App.D.C. 150, 90 F.2d 395.

7. See Pillsbury v. United Engineering Co., 1952, 342 U.S. 197, 72 S.Ct. 223; Kobilkin v. Pillsbury, 9 Cir., 1939, 103 F.2d 667, affirmed, 1940, 309 U.S. 619, 60 S. Ct. 465, 84 L.Ed. 983.

work, it does not seem to me that the employee suffers a new "accidental injury" each time a period of incapacity occurs. The cases I have been able to find clearly hold otherwise.

When some event happens to a person but no damage appears to have been done him, and then at some later time a damage becomes known and he is thereafter disabled, practical considerations pose a problem. These are the "latent injury" cases. They [8] must now be viewed in the light of the opinion in the Pillsbury case, infra. In that case the Supreme Court expressly reserved the question in true latent injury, as well as occupational disease cases. But the Court held that "injury" in the statute does not mean "compensable injury" and overruled that premise in the cases just cited, note 8. However that may be, I assume that in any event the date of an injury in which the damage is for a time unknown is not later than the date it first becomes known.

I think the same rules apply to an injury which is an occupational disease. The onslaught of an occupational disease may be gradual, indeed imperceptible. Therefore, in an occupational disease, as in a latent damage from an accident, the date of the injury may from the practical necessities of the case be fixed as the date of the beginning of the first resulting incapacity or the date when the incapacity was knowable. But when that has occurred the person has been injured. Once the employee has the disease and is incapacitated from it, he is injured. The date of the injury is thus fixed. If the symptoms come and go thereafter, without any further contact with a cause which would result in a new incidence of the disease, he has the same disease, not a new one, the same injury, not a new one; only his incapacity has been interrupted.

In the case at bar we are not to determine the date of the disability, or disabilities, but we are to determine the date of the injury. And that date, in my view, was when it was first known that the dermatitis caused by contact with the wheat flour would produce an incapacity to work. The contact with the wheat flour may have been over a long period of time, the dermatitis may have lasted over a long period, and the resulting incapacity may have been over a long period. But the date of the injury was the time at which the former produced the latter. If the employee had no contact with wheat flour after she was first incapacitated, her later dermatitis was not a new disease; it was merely the reappearance of an old disease. In such event she did not have a new injury upon the later occasions; she merely had further disabilities resulting from the original injury.

The difficulty into which my brethren have fallen, it seems to me, is that they are fixing the date or dates of this employee's disability or successive disabilities. They ignore, it seems to me, the requisite presence of cause as an essential of "injury".

In sum, therefore, it seems to me that, where an employee comes for the second time into contact with a cause of an occupational disease and thereupon contracts the disease again, there is another injury at that point. But, where the employee does not come in contact with a cause a second time, the reappearance of the disease being due to the original contact with the cause, there is no second injury. I would, therefore, define the term "injury" to include any reappearance of an occupational disease which is due to renewed contact with a cause, but I would not define it to include reappearance of a disease where the employee had no further contact with a cause.

8. Judge Chesnut's opinion on that point in Kropp v. Parker, Md.1934, 8 F.Supp. 290, was cited with approval by the Third Circuit in Di Giorgio Fruit Corporation v. Norton, 1937, 93 F.2d 119, certiorari denied, 1938, 302 U.S. 767, 58 S.Ct. 480, 82 L.Ed. 596, and both those opinions were cited and followed by this court in Potomac Electric Power Co. v. Cardillo, 1939, 71 App.D.C. 163, 107 F.2d 962, and again in Great American Indemnity Co. v. Britton, 1949, 86 U.S.App.D.C. 44, 179 F.2d 60.

In the present case this employee, by October, 1946, was free of the symptoms of dermatitis and was able to work. After a period of time the dermatitis reappeared. We do not know whether in the meantime she went to work at some employment where she was not in contact with wheat flour or whether she returned to an employment in which she had to handle wheat flour and thus renewed contact with a cause of dermatitis.

Having defined the statutory term "injury" to include recurrences of occupational diseases due to re-contact with causes, I would remand this case to the Deputy Commissioner for his determination as to whether the recurrence here involved was or was not such a recurrence. His determination in that respect would be a finding of fact, conclusive if supported by substantial evidence on the record as a whole, the same as are his other rulings upon similar questions.

I am impelled to add the following further observations. It seems to me that the decision of the court in this case will have serious results in respects other than those here presented. For example, the decision means that a new claim must be filed by the employee upon every recurrence of his disease; unless, of course, after the recurrence he receives compensation without an award. The statute, as we have already seen, is quite specific in decreeing that compensation is barred unless claim is made within one year after the injury or after voluntary compensation ceases. If each recurrence is a new injury, a new claim must be filed upon each recurrence, again unless after the recurrence compensation is paid voluntarily. What difficulties this rule will cause I do not know, but an employee with an intermittent disability will surely encounter trouble. In my view such an employee is protected when he has filed his first claim. Moreover, I do not know what effect the decision of the court will have upon the seven-day exemption period provided in Section 6 of the statute.[9] If each recurrence is a new

disability from a new injury, I suppose a new seven-day period occurs. Under my view of the statute there would, of course, be only one such period for the disability, intermittent or continuous, which ensued from the one original injury. I do not know how the decision will work out under the successive disability provisions of Section 8 (f) of the Act.[10] It is there provided that compensation for each successive disability following a previous disability shall be only for the disability caused by the subsequent injury. If an intermittent disability is a new injury upon each recurrence, a series of echeloned compensation awards will result, which would seem to me to be confusing. The statute requires new computations of average weekly wages upon each new disability and provides that upon a subsequent injury the average weekly wages shall be such sum "as will reasonably represent the earning capacity" of the employee at the time of the subsequent injury. I have not attempted to make an accurate computation, but it seems to me that, if every recurrence of an intermittent disability is a new injury and a new disability, as the court now holds, there will be a progressively vanishing result. No such difficulties would be encountered under my view of the statute.

I think this decision will largely nullify the statutory provisions of repose, particularly the one-year limitation upon claims after cessation of voluntary payments. Such cessation usually occurs, one would suppose, when the employee resumes working. The only need for a later claim would be if and when he becomes sick again. The statute says that his claim must be within a year after the last voluntary payment. This decision says that he has a year after his incapacity recurs. I do not see how, from the practical viewpoint, there is much room left for application of the statutory provision.

The basic objectives of the statute, to afford compensation to workmen, must of course be kept in mind, but several considerations occur to me in that connection.

9. 44 Stat. 1426 (1927), as amended, 33 U.S.C.A. § 906.

10. 44 Stat. 1429 (1927), 33 U.S.C.A. § 908(f).

In the first place, this decision will cut both ways from the employee's point of view, as I have just pointed out. In the second place, the requirement that a claim be filed is not harsh. The employee carries the key to that difficulty. In the third place, a reasonable period for repose of liability is in no way contradictory of any basic objectives. And, in the fourth place, Congress wrote the statute, and if we understand it we have no power to vary it.

The basic premises from which I proceeded in this matter have been established conclusively by the decision and opinion of the Supreme Court in Pillsbury v. United Engineering Co.[11]

---

11.   1952, 342 U.S. 197, 72 S.Ct. 223.