Ernest P. LE BLANC, Claimant, Appellant,

v.

Joseph H. HENDERSON, Deputy Commissioner, etc., et al., Appellees.

No. 17473.

United States Court of Appeals Fifth Circuit.

March 24, 1959.

Bob F. Wright, Lafayette, La., James Domengeaux, Lafayette, La., for appellant.

Lloyd Cyril Melancon, Asst. U. S. Atty., New Orleans, La., William O. Bonin, New Iberia, La., M. Hepburn Many, U. S. Atty., New Orleans, La., for appellee Joseph H. Henderson.

Landry, Watkins, Cousin & Bonin, New Iberia, La., Stuart Rothman, Solicitor of Labor, Ward E. Boote, Asst. Solicitor, Herbert P. Miller, Attorney, U. S. Dept. of Labor, Washington, D. C., of counsel, for appellee Delta Gulf Drilling Co. and Fidelity & Casualty Co. of New York.

Before RIVES, CAMERON, and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

In a claim under the Longshoremen's and Harbor Workers' Compensation Act,[1] the Deputy Commissioner conducted hearings at which three physicians, two lay witnesses, and the claimant testified. Upon the basis of those hearings, the Deputy Commissioner made findings of fact and awarded compensation to the claimant on account of temporary total disability for certain stated periods and rejected the claim for compensation thereafter. The claimant filed his complaint in the District Court[2] to review the rejection of his claim for additional compensation. The district court sustained the motion of the defendants to dismiss that complaint, and this appeal followed.

At the time of his injury, the claimant had, for about seven months, been in the employ of Delta Gulf Drilling Company as a "roughneck," performing his labors on a drilling platform situated over the Outer Continental Shelf in the Gulf of

---

1. 44 Stat. 1424, 33 U.S.C.A. § 901 et seq., as extended by Section 4(c) of the Outer Continental Shelf Lands Act, 67 Stat. 462, 43 U.S.C.A. § 1333(c).

2. Under 33 U.S.C.A. § 921; see also the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq.

Mexico. His occupation brought him in frequent contact with drilling mud mixed with caustic soda, which caused a condition on his hands, face, arms, chest and legs medically called a "contact" dermatitis and resulted in his disability for the first time beginning January 29, 1956. Following medical treatment, he returned to work on February 11, 1956. He again came in contact with the mixture, developed the contact dermatitis, and was absent from work from March 2, 1956, to April 23, 1956. He then continued in such employment to April 28, 1956, and, after further contact with the mixture, again developed the contact dermatitis, as a result of which the Deputy Commissioner found that he was temporarily totally disabled from April 29, 1956, to August 11, 1956. For such periods of temporary total disability the Deputy Commissioner awarded compensation in the total sum of $850, but he rejected the claim for additional compensation in the following part of his order:

"That the claim of the claimant herein for compensation in addition to that contained in the 'Award' herein above based upon the contention that he cannot go back to the same kind of work he was doing for Delta Gulf Drilling Company because of dermatitis, is Denied and Rejected for the reason stated in Item 8 hereinabove."

Item 8 of the findings of fact, so referred to, reads as follows:

"8. That on August 11, 1956 the claimant's 'contact' dermatitis was completely cleared up and as of that date he was discharged (by the physician) as physically able to return to his usual work with no permanent disability; that the Deputy Commissioner now finds that all disability for work due to, resulting from or causally related to the said 'contact' dermatitis that developed while he was in the employ of Delta Gulf Drilling Company, terminated on August 11, 1956."

The claimant's family physician advised him to seek employment which would not entail coming in contact with chemically treated mud. His average weekly wage in the oil field, where he would necesarily come in contact with the mixture, had been $110.24. He claimed that the most remunerative occupation he had been able to secure elsewhere was that of a truck driver at a weekly wage of $50. His claim is that frequent contact with the chemically treated mud has caused him to develop a sensitivity, allergy, or susceptibility to the irritant, caustic soda, so that any additional contact will produce a severe rash or dermatitis, and that thereby he has suffered a permanent partial disability.

The claimant attacks the Deputy Commissioner's finding that he suffered no disability beyond August 11, 1956, both as contrary to law,[3] and as unsupported by substantial evidence on the record considered as a whole.[4]

It is not clear whether item 8 of the Deputy Commissioner's findings, heretofore quoted, upon the basis of which he rejected the claim for additional compensation, is or is not based upon a concept of the meaning of "disability" under

3. Specifically as contrary to 33 U.S.C.A. § 902(10) defining "disability" as follows:
   "(10) 'Disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."
   "Injury," in turn, is defined by subdivision (2) of the same section as follows:
   "(2) The term 'injury' means accidental injury or death arising out of and in the course of employment, and such occupa-

tional disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment."

4. Admittedly the standard for judicial review. See O'Leary v. Brown-Pacific-Maxon, 1951, 340 U.S. 504, 508, 71 S.Ct. 470, 95 L.Ed. 483.

the Act different from that contended for by the claimant. A colloquy between the Deputy Commissioner and the claimant's counsel at the close of the last hearing would seem to indicate that that is the true basis for the critical finding:

"Mr. Wright (claimant's counsel): I am saying the sensitivity was an occupational disease, because if he goes back to the job he will become disabled again, and he doesn't have a duty to go back and become re-injured. He is disabled before he goes back.

"The Deputy Commissioner: He is not, he has no disability until he goes back and breaks down again.

"Mr. Wright: .Even though that dormant condition is there?

"The Deputy Commissioner: If it flares up again he is entitled to compensation if it is under compensable circumstances, of course, but compensation under the Longshoremen's Act is payable only for disability flowing from, shall I say, a compensable injury under the Longshoremen's Act and that is for the period of disability and when the disability is ended, that is all.

"You have painters who develop lead poisoning. They are disabled as long as they are disabled from lead poisoning. When they get over it they go back to work.

"Mr. Wright: If they have to leave painting and go to another job they are disabled.

"The Deputy Commissioner: We will say that is unfortunate for that individual."

It is the function of the Deputy Commissioner, in the first instance, to pass upon such questions as whether the allergy, sensitivity or susceptibility which the claimant suffered is an occupational disease or infection arising naturally out of his employment by the defendant Gulf Drilling Company;[5] the effect, if any, of any predisposition of claimant, before such employment, to the acquisition of such sensitivity, allergy or susceptibility;[6] and the period and extent of any disability.[7]

Before the District Court and, in turn, this Court can perform their proper functions of review, the findings of the Deputy Commissioner must be more specific.[8] The judgment of the District Court is vacated, and the action remanded to the District Court with instructions that it remand the action to the Deputy Commissioner for more specific findings by him based on all the evidence heretofore taken and any additional evidence that may be taken, and for further proceedings thereafter by the District Court in accordance with the views expressed herein.

Vacated and remanded.

---

5. 33 U.S.C.A. § 902(2) and (10); see Cadwallader v. Sholl, 1951, 89 U.S.App. D.C. 285, 196 F.2d 14; compare Picquet v. Toye Bros. Yellow Cab. Co., La.App. 1955, 77 So.2d 569; Silverstein v. Metropolitan Life Ins. Co., 254 N.Y. 81, 171 N.E. 914, 915.

6. See 33 U.S.C.A. § 908(f) (2); compare Lawson v. Suwannee Fruit & S.S. Co., 1949, 336 U.S. 198, 69 S.Ct. 503, 93 L.

Ed. 611; Old Dominion Stevedoring Corp. v. O'Hearne, 4 Cir., 1955, 218 F.2d 651.

7. Compare Southern S.S. Co. v. Norton, 3 Cir., 1939, 101 F.2d 825.

8. See 33 U.S.C.A. § 919; 5 U.S.C.A. § 1007; Ocean S.S. Co. of Savannah v. Lawson, 5 Cir., 1933, 68 F.2d 55; Dixie Sand & Gravel Corporation v. Holland, 6 Cir., 1958, 255 F.2d 304.