Ernest P. LeBLANC, Appellant,

v.

Joseph H. HENDERSON, Deputy Commissioner, Seventh Compensation District, et al., Appellees.

No. 19041.

United States Court of Appeals
Fifth Circuit.

April 10, 1962.

Bob F. Wright, Domengeaux & Wright, Lafayette, La., for appellant.

William O. Bonin, Landry, Watkins, Cousin & Bonin, New Iberia, La., for appellees Delta Gulf Drilling Co. and Fidelity & Casualty Co. of New York.

Gene S. Palmisano, Asst. U. S. Atty., M. Hepburn Many, U. S. Atty. (Charles Donahue, Sol. of Labor, Herbert P. Miller, Asst. Sol., Alfred H. Myers, Atty., U. S. Department of Labor, of counsel), for appellee Deputy Commissioner.

Before TUTTLE, Chief Judge, and RIVES and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

■ Ernest P. LeBlanc appeals for the second time from the denial of his claim · for permanent partial disability payments under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 908. He argues that the Deputy Commissioner's finding that he did not acquire a sensitivity to caustic soda is contrary to the evidence. We conclude that sufficient evidence supports the disputed finding and affirm the decision below.

LeBlanc worked as a roughneck on a drilling platform over the Outer Continental Shelf in the Gulf of Mexico from July 1955 to January 29, 1956. His work brought him in frequent contact with drilling mud mixed with caustic soda, as a result of which he developed a skin disease known as "contact dermatitis". He was forced to stop work January 29 but recovered and returned to his job February 11. A recurrence of the skin condition disabled him again and he stopped work March 1. He started work April 23 but the dermatitis developed for the third time and he left the job five days later. He was disabled until August 11, 1956, when a doctor declared that he was well and able to return to his usual work with no disability.

LeBlanc thereafter filed a claim for disability payments. The Deputy Commissioner awarded him payments for a temporary total disability for all the time that he was out of work from January 29 till August 11. He denied LeBlanc's claim for permanent partial dis-

ability payments for the period after August 11, stating:

"8. That on August 11, 1956 the claimant's 'contact' dermatitis was completely cleared up and as of that date he was discharged (by the physician) as physically able to return to his usual work with no permanent disability; that the Deputy Commissioner now finds that all disability for work due to, resulting from or causally related to the said 'contact' dermatitis that developed while he was in the employ of Delta Gulf Drilling Company, terminated on August 11, 1956."

The district court affirmed this finding. LeBlanc appealed. He argued that during his employment on the drilling platform he developed a sensitivity to caustic soda by the repeated exposure to it and that the developed sensitivity provoked a recurrence of dermatitis whenever he came in contact with caustic soda. He said that his doctor had advised him not to return to work on the drilling platform and that the only other work he could obtain was as a truck driver at a much lower weekly wage. This Court held that the Deputy Commissioner's findings were ambiguous and did not negate the claimant's assertions. We remanded the case to allow the Deputy Commissioner to clarify his findings and to state whether LeBlanc acquired a sensitivity as an occupational disease. 264 F.2d 946. The Deputy Commissioner found that he did not, and that after recovering on the last occasion he was no longer disabled. The clarified findings read as follows:

"9. That the claimant did not acquire a sensitivity, allergy, or susceptibility to the irritant caustic soda; that the claimant can perform any work which he could perform prior to January 28, 1956 except work which would bring him in contact with caustic soda; that the reason he cannot do work where he would come in contact with caustic soda is not because of any acquired sensitivity but because caustic soda is an irritant which would cause dermatitis to a great majority, if not all people who come in contact with it; that the claimant, in his physical condition subsequent to August 11, 1956, has not suffered any loss in wage-earning capacity."

The district court again affirmed the findings, and this appeal followed.

 The sole question for decision here is whether the evidence supports the finding that LeBlanc did not acquire a sensitivity to caustic soda during the period of his employment as an occupational disease resulting in permanent disability. We may not overturn the finding unless it is unsupported by substantial evidence on the record considered as a whole. O'Leary v. Brown-Pacific-Maxon, Inc., 1951, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483.

The three doctors testified that the dermatitis was caused by LeBlanc's contact with the caustic soda mixed in the drilling mud and that in view of his history of recurring dermatitis it would not be advisable for LeBlanc to return to his job on the drilling platform. Their combined testimony establishes that caustic soda is a "primary irritant" that will cause an unhealthy skin condition when it comes in contact with most or all people. Whether the caustic soda will act as a primary irritant and cause an immediate outbreak on a person's skin in any particular case, however, depends on a variety of factors, such as the concentration of caustic soda in the solution or mixture that is in contact with the skin, the duration of the contact, and the susceptibility of the person to the irritation. When these factors do not produce an immediate outbreak it is possible that repeated exposure will produce a skin condition after a while. The testimony reveals that the medical reasons for these phenomena are not yet established. Dr. Robinson, a witness for the plaintiff, stated that a person may build up a sensitivity to a substance by repeated contacts causing each successive outbreak of irritation to be more acute, as in the case of poison ivy, but it is not

known what causes the sensitivity to develop. When asked the hypothetical question whether a man, who handled caustic soda in his work but did not have dermatitis until after a long period of time, had developed a sensitivity to the caustic soda, Dr. Robinson answered that it was probable but "you can't say it positively." He indicated that a person who had developed a sensitivity to a substance would have a holdover of the tendency to react to the substance after his skin had cleared up but that a renewed contact would be necessary to provoke another flare-up. Dr. Hennington, a witness for the defendants, was asked whether the fact that an individual did not break out with a skin condition until after several months of contact with a substance would indicate that he had built up a sensitivity over a period of time; the question was predicated upon the assumption that if one were predisposed to susceptibility the first contact would provoke it. Dr. Hennington answered that it was not his interpretation of the situation. When counsel for the claimant said that he was trying to develop the point that it was only because of LeBlanc's continued contact with the caustic soda that the dermatitis developed, Dr. Hennington said: "I said I understand the question, I didn't say I was agreeing with him." At another point, Dr. Hennington testified: "In a majority of patients [who have become sensitive to a certain substance and have developed dermatitis], it would recur on repeated exposures, but there again like I might work around a substance for six months before becoming allergic. By the same token, right out of a clear sky, you may become non-allergic. We can't explain that, medically speaking."

The record reveals medical uncertainty as to whether LeBlanc did *develop* a sensitivity and what its duration might be. Even his own expert stated merely that it was "probable" that he acquired the sensitivity from the repeated contacts with caustic soda. The defendants' expert disagreed. Taking the record as a whole, it is entirely consistent with the evidence to assume that the timing of LeBlanc's dermatitis was fortuitous and that he is no more sensitive to caustic soda today than he was the day he first went to work on the drilling platforms. The doctors agreed that LeBlanc was completely cured of dermatitis August 11, 1956. He had no remaining skin inflammation and was able to do strenuous physical work.

The burden of proof was on the claimant. On the facts and testimony of this case, the Deputy Commissioner acted properly in finding that LeBlanc failed to carry that burden and in rejecting his claim for permanent partial disability payments.

The judgment is

Affirmed.