227 F.2d 16
 AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA (sometimes known as American Casualty Company), a corporation, Appellant,
v.
Theodore BRITTON, Deputy Commissioner, United States Department of Labor, Bureau of Employees' Compensation, District of Columbia Compensation District, and Edith Dickerson and Liberty Mutual Insurance Company, Appellees.
 No. 12251.
 United States Court of Appeals District of Columbia Circuit.
 Argued February 15, 1955.
 Decided June 9, 1955.
 
 Mr. Guy M. Bayes, Washington, D. C., for appellant.
 Mr. Ward E. Boote, Asst. Solicitor, U. S. Dept. of Labor, with whom Messrs. Leo A. Rover, U. S. Atty., and Lewis Carroll, Asst. U. S. Atty., were on the brief, for appellee Britton. Mr. Robert L. Toomey, Asst. U. S. Atty., also entered an appearance for appellee Britton.
 Mr. John P. Arness, Washington, D. C., with whom Messrs. Arthur J. Phelan and Paul R. Connolly, Jr., Washington, D. C., were on the brief, for appellee Liberty Mut. Ins. Co. Mr. John C. Poole, Washington, D. C., was on the brief for appellee Dickerson. Mr. Dudley G. Skinker, Washington, D. C., entered an appearance for appellee Dickerson.
 Before PRETTYMAN, BAZELON and DANAHER, Circuit Judges.
 DANAHER, Circuit Judge.
 
 
 1
 Our problem is to decide which of two insurance carriers must discharge an employer's unquestioned liability arising from the claimant's disability due to tuberculosis incurred while serving as a visiting nurse. There are two episodes to be considered. Claimant first contracted tuberculosis while appellant was the carrier over the period from January 31, 1937 to January 31, 1939. Disability then terminated on September 3, 1940 when claimant returned to work, and her claim, pursuant to award, was fully satisfied. For some twelve years claimant worked regularly, full-time, until about October 9, 1952 when she again became, and up to September 1, 1953 remained, disabled due to tuberculosis. Over this latter period, in fact from January 1, 1941 to September 18, 1953, appellee, Liberty Mutual Insurance Company, was the insurance carrier. Claimant filed two claims, one dated February 18, 1953, alleging a reactivation of the disease which had caused the 1939-1940 disability, and the other, dated February 20, 1953 alleging that during a period ending on or about October 9, 1952, she contracted, or suffered because of work conditions, an aggravation of previously existing tuberculosis. The Instructive Visiting Nurse Society of Washington, Inc., the employer at all times mentioned, was, of course, primarily liable in any event, and as to it, the claims were timely. Appellant contended that, so far as its possible liability was involved, the 1953 claim had not been filed within the prescribed time. The Deputy Commissioner found that the 1952-1953 disability was not the result of claimant's work activities subsequent to September 3, 1940, nor was it caused by acquisition of germs through contacts during employment in the period prior to October 9, 1952. Rather, he found that the disability was the result of the recurrence of tuberculosis acquired in 1938 as to which timely claim had then been filed and for which the 1940 award had been entered. An award having been entered accordingly, appellant sought to restrain enforcement, and following denial of such relief, brings this appeal.
 
 
 2
 The applicable statute is the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927,[1] as made applicable to the District of Columbia by the Act of May 17, 1928.[2] The term "injury" includes an occupational disease.[3] The right to compensation for disability is barred unless a claim be filed within one year after the "injury."[4] And we held in Cadwallader v. Sholl[5] that the question of whether "recurrence" is an "injury" within the meaning of this section is one of law for the court. There the claimant's contact with flour during her employment as a baker, caused a compensable dermatitis which, after a period of apparent freedom from symptoms, lighted up and resulted in an attack which was construed to be an "injury." We noted that "The Deputy Commissioner did not expressly find and the record does not show whether appellant (1) resumed work during the interval [some two months] and thereby brought about the recurrence of the disease or (2) did not resume work, in which case the second attack of the disease was a consequence of the previous work that had caused the previous attack. On either hypothesis we think appellant's claim was timely because it was filed within one year after the disease recurred."[6]
 
 
 3
 Because of the lapse of twelve years between the original disability and the recurring disability during which period the claimant was apparently in good health, appellant argues that the carrier securing the employer at the time of the second disability should bear the loss. There is some basis for such a contention. In Grain Handling Co. v. Sweeney, 2 Cir., 1939, 102 F.2d 464, 466, certiorari denied, 1939, 308 U.S. 570, 60 S.Ct. 83, 84 L.Ed. 478, Judge Learned Hand said:
 
 
 4
 "I can see no difference between a fresh infection and the awakening of an old one. The statute is not concerned with pathology, but with industry disability; and a disease is no disease until it manifests itself. Few adults are not diseased, if by that one means only that the seeds of future troubles are not already planted; and it is a common place that health is a constant warfare between the body and its enemies; an infection mastered, though latent, is no longer a disease, industrially speaking, until the individual's resistance is again so far lowered that he succumbs."[7]
 
 
 5
 The Deputy Commissioner has specifically found that the claimants' disability was attributable to the earlier "injury." This finding is not inconsistent with nor is it precluded by our Cadwallader opinion, supra. We were there concerned only with the question of whether the filing of a claim was timely under the Act, and not with the question as to which insurer may be liable where there are successive periods of disability. In circumstances such as are here presented, the factual situation will govern the incidence of liability. Our statute provides that the insurance carrier becomes liable "in the same manner and to the same extent" as the employer,[8] so that the claimant-employee is to be protected in any event. We recognize that in some situations the terms of the policies issued by successive carriers may have a bearing on the question of which will discharge the employer's obligation.[9] Indeed, it has sometimes been held that an award may run against the employer and each of a series of insurers.[10] But we are not here concerned with one carrier's contribution to another, or apportionment, or kindred problems. Here it is clear that liability must be imposed upon the carrier which was on the risk at the time of the "injury" bearing the requisite causal relationship to the disability giving rise to the claim.
 
 
 6
 We are bound by the Deputy Commissioner's findings that the recurrence of tuberculosis in 1952 was "the result of the natural progression of the [disease] unaffected by any intervening work-connected cause and it was not the result of the acquisition of new or additional germs of tuberculosis . . ."; and that "the claimant did not sustain personal injury or contract an occupational disease or suffer an aggravation of a pre-existing condition arising out of and in the course of her employment subsequent to September 3, 1940 . . .." Accordingly, the appellant, the first carrier, is liable for the present disability.
 
 
 7
 "When disability has once resulted from occupational disease, a second disability occurring under a different carrier will be chargeable to the first carrier if it is a recurrence of the first disability. The persistence of symptoms in the meantime, and the failure to demonstrate an incident that can independently explain the second onset, are strong grounds for finding a mere recurrence. Thus, when claimant contracted undulant fever and received some payments of compensation from the first carrier, a later disability from undulant fever under a second carrier was held to be a continuance of the first, since the claimant had never fully regained his health, and since the first carrier could not prove an independent infection that would account for the second onset. A similar rule has been followed as to dermatitis, in spite of the fact that the same kind and degree of exposure continued between the first and second disabilities." (Footnotes omitted.)[11]
 
 
 8
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 33 U.S.C.A. § 901 et seq
 
 
 [2]
 D.C.Code § 36-501 et seq., 1951
 
 
 [3]
 33 U.S.C.A. § 902(2)
 
 
 [4]
 33 U.S.C.A. § 913
 
 
 [5]
 1951, 89 U.S.App.D.C. 285, 196 F.2d 14, 15, certiorari denied, 1952, 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363
 
 
 [6]
 Cf. Contractors v. Pillsbury, 9 Cir., 1945, 150 F.2d 310, 312
 
 
 [7]
 See Judge Prettyman dissenting in Cadwallader v. Sholl, note 5 supra, and generally, Appleman, Insurance Law and Practice §§ 4916-4918 (1942)
 
 
 [8]
 33 U.S.C.A. § 935
 
 
 [9]
 Witchekowski v. Falls Co., 1927, 105 Conn. 737, 740, 136 A. 565
 
 
 [10]
 See, e. g., Plecity v. George McLachlan Hat Co., 1933, 116 Conn. 216, 226, 164 A. 707
 
 
 [11]
 Larson, Workmen's Compensation Law § 95.26(1952); and see General Accident Fire & Life Assur. Corp. v. Waldon, 1950, 121 Ind.App. 1, 94 N.E.2d 487; Sylvia's Case, 1943, 313 Mass. 313, 47 N.E.2d 293