Julia GOLOFSKI, Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare.

No. 78–2628.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Aug. 6, 1979.

Decided Oct. 15, 1979.

Patrick H. Mahady, Mahady & Mahady, Greensburg, Pa., for appellant.

Stephanie W. Naidoff, Regional Atty., Thomas A. Dougherty, Jr., Asst. Regional Atty. Region III, Dept. of H. E. & W., Philadelphia, Pa., and Robert J. Cindrich, U. S. Atty., Stephen I. Goldring, Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before ALDISERT, VAN DUSEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Senior Circuit Judge.

This is an appeal from a final order of the district court granting summary judgment in favor of the Secretary of Health, Education and Welfare against Julia Golofski, a claimant of disability benefits under the Social Security Act. The district court concluded that the Secretary's decision, denying benefits to Golofski, was supported by substantial evidence in its review of the Secretary's action pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). We vacate and remand for entry of an order remanding the case to the Secretary for further evaluation and consideration.

On March 30, 1976, plaintiff filed with the Social Security Administration an application for disability benefits, alleging that her disability started in February 1952 as a result of removal of her right kidney and arthritis. After denial of disability benefits twice by the administrative authorities [1] and as the result of a request for hearing, a hearing was held on October 15, 1976, and benefits were denied again in an administrative decision dated December 21, 1976. The appeals council affirmed this denial in a May 5, 1977, decision. The complaint instituting the action now on appeal to this court was filed June 10, 1977, pursuant to 42 U.S.C. § 405(g).

The above-mentioned 1978 Magistrate's Report (see note 1) concluded with this language:

"An examination of the medical record leads to the conclusion that Drs. Markle and DeSimone both believed that the plaintiff was disabled from any type of gainful employment. This is the only relevant medical evidence in the record. However, the question is one of determining whether or not this condition existed on or before December 31, 1953, the date on which the plaintiff last met the special earnings requirement of the Act.

"In his report of February 24, 1977 (R. 115), Dr. Markle concluded that at the time of the report the plaintiff was totally disabled but some ambiguity existed as to whether she was so disabled on or before December 31, 1953. Where such critical ambiguity exists, it sometimes becomes incumbent upon the Administrative Law Judge to search further. *Gachette v. Weinberger*, 551 F.2d 39 (3d Cir. 1977). This was not done. However, at the oral argument on the motions presently pending before the Court, counsel for the plaintiff was requested to gain clarification of this matter from Dr. Markle. In a report dated December 3, 1977 and filed as an exhibit in this case, Dr. Markle stated:

'. . . on January 4, 1952, I removed her right kidney because of necrosis of this kidney secondary to pyelonephritis and cystic disease. She has polycystic condition of her left kidney which gives her some hypertension and

1. The history of this case is contained in the February 8, 1978, Magistrate's Report and Recommendation, which is reproduced at 14a of the appendix. See *Golofski v. Califano*, Civil No. 77–693, W.D.Pa. (Document 13 at pp. 1 & 2). See also Magistrate's Supplemental Report and Recommendation of September 20, 1978 (Document 24 in Civil No. 77–693), reproduced at 31a of appendix. The disability benefits were denied on May 3, 1976, and May 24, 1976, by the Social Security Administration.

some urinary tract infection from time to time that requires constant medical supervision. I feel that this patient has been totally and permanently disabled since my operation of January 4, 1952 for any type of employment and she should be on disability compensation as her condition is permanent and will require medical supervision and care for the rest of her life.'

"When this is coupled with Dr. DeSimone's statement that he too believes that the plaintiff is totally disabled, the Secretary's conclusion does not appear to be supported by substantial evidence.

"Accordingly, it is respectfully recommended that the cross motions for summary judgment be denied, without prejudice, and that the case be remanded to the Secretary of Health, Education and Welfare for further evaluation and consideration." [2]

On February 22, 1978, the case was remanded to the Secretary for further evaluation and consideration by order of the district court. Supplemental evidence was added to the administrative record and filed with the district court on August 10, 1978, after a second final decision by the Secretary of Health, Education and Welfare holding that plaintiff was not entitled to social security benefits because she was not disabled within the meaning of that term in the Social Security Act on or before December 31, 1953. Argument was heard in the

district court on the renewed motion for summary judgment on September 19, 1978. The U.S. Magistrate filed a supplemental report and recommendation on September 20, 1978, which was adopted as the opinion of the court by its October 13, 1978, order. That order granted the Secretary's motion for summary judgment.

The principal issues in this case are (A) whether there is substantial evidence on the administrative record to show that plaintiff was "disabled" within the meaning of that term under Title II of the Social Security Act, as amended, 42 U.S.C. § 423(d), on or before December 31, 1953, which is the last date she met the special earnings requirement of the Act; and (B), if plaintiff recovered from the disability which existed at the time of her 1952 operation, on what date her previous disability recurred, as indicated by the May 21, 1976,[3] medical report of Dr. Markle, and the July 8, 1976, medical report of Dr. DeSimone.

To support a finding of disability, the evidence must show a medically determinable physical or mental impairment which has lasted, or can be expected to last, for a continuous period of not less than 12 months and such impairment must render the plaintiff unable to engage in any substantial gainful employment.[4] The regulations promulgated by the Secretary of Health, Education, and Welfare are pertinent in evaluating the evidence presented

---

2. As noted below, Dr. Markle has filed three reports concerning plaintiff's alleged disability in 1952 and 1953, and only when asked to clarify the first two reports did he state that he "felt" that plaintiff was "totally and permanently disabled since my operation of January 1952 for any type of employment and she should be on disability compensation . . ."

3. We have not overlooked the subsequent letter reports of Dr. Markle dated February 24, 1977, and December 3, 1977, but note the May 21, 1976, letter as the first written medical expert support for plaintiff's claim.

4. 42 U.S.C. § 423(d) provides, inter alia:
"(d)(1) The term 'disability' means—
    (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

. . . which has lasted or can be expected to last for a continuous period of not less than 12 months; . . .
"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.
"(4) The Secretary shall by regulations prescribe the criteria for determining when services performed or earnings derived from services demonstrate an individual's ability to engage in substantial gainful activity. . . .

"(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

on the issue of disability. 20 C.F.R. § 404.-1503(a) provides in part:

"In the determination of whether or not an impairment in a particular case constitutes a disability . . ., consideration is given to *all the pertinent facts* of that case."

(Emphasis supplied.)

20 C.F.R. § 404.1526 provides in part:

"A statement by a physician that an individual is, or is not, 'disabled,' 'permanently disabled,' 'totally disabled,' 'totally and permanently disabled,' 'unable to work,' or a statement of similar import, being a conclusion upon the ultimate issue to be decided by the Secretary, shall not be determinative of the question of whether or not an individual is under a disability. The weight to be given such physician's statement depends on the extent to which it is supported by specific and complete clinical findings *and is consistent with other evidence as to the severity and probable duration of the individual's impairment or impairments.*"

(Emphasis supplied.)

The instant case is more complicated than the usual disability case because plaintiff has attempted to establish that she was disabled, within the meaning of Title II of the Social Security Act, on or before December 31, 1953. This has necessitated the presentation of evidence—to the extent it is still available—concerning events that happened more than 20 years ago. Indeed, some important evidence is no longer available. Dr. Markle, the physician who treated plaintiff from 1949 to 1954, has stated that he no longer has medical records concerning his patients during that period. Dr. Markle has, however, submitted letters discussing plaintiff's medical condition. Dr. DeSimone, who has treated plaintiff from 1954 to the present, also has submitted a letter discussing plaintiff's medical condition. Additionally, plaintiff, her husband, and a former neighbor all testified at the

hearing held before an administrative law judge on October 15, 1976.

In support of the application for disability benefits she filed on March 30, 1976, plaintiff stated that after she was laid off from her job as punch press operator in 1949, her side started to hurt. She stated that Dr. Markle discovered she had a serious kidney problem, which necessitated an operation to remove her right kidney, and that she was unable to work since the incision continued to drain for over half a year (51a). Thereafter in 1953, she took a position with Joysen Toggs which required her to lift and carry packing boxes to a conveyor (47a ff.). Because she was berated by her foreman for not being able to do this work without assistance, she quit this job after two days. Also she had swelling in her legs and ankles (56a), an arthritic condition, and backaches (58a & 52a) which required her to be confined in bed in 1952 and 1953 (56a–57a), so that her husband[5] and neighbor[6] were required to do the cleaning and cooking. Her hands and legs were swollen and she had cramps in her stomach (61a–62a). Dr. Markle's report of 5/21/76 (Exhibit 18 at 107a) states that plaintiff was disabled and under his care from 1949 to 1954 because of a kidney condition requiring a right nephrectomy. This doctor's December 3, 1977, report (142a) reads as follows:

"This letter is intended to inform those concerned that this patient has been under my care since 1949. On January 4, 1952, I removed her right kidney because of necrosis of this kidney secondary to pyelonephritis and cystic disease. She has polycystic condition of her left kidney which gives her some hypertension and some urinary tract infection from time to time that requires constant medical supervision. I feel that this patient has been totally and permanently disabled since my operation of January 4, 1952 for any type of employment and she should be on disability compensation as her con-

---

5. Her husband's testimony appears at 57a–63a.

6. Mrs. Hovarn testified that, from 1949 to 1954, she did the laundry for plaintiff, who had been

her neighbor, as well as washed windows occasionally (64a–67a).

dition is permanent and will require medical supervision and care for the rest of her life.

"She certainly is permanently disabled at this time. In addition to the kidney problem, she has generalized arthritis which is also progressive and in need of constant medical supervision. If further information is desired, please feel free to contact the undersigned."

Dr. DeSimone's report of July 8, 1976 (Exhibit 21 at 114a) agrees with Dr. Markle's conclusion that plaintiff in 1976 was disabled. Although Dr. DeSimone did not begin treating plaintiff until 1954, he has seen her monthly since that time and indicates that he is familiar with her medical history in the preceding years.

A third physician, Dr. Dakin, submitted a report dated September 22, 1976 (Exhibit 20 at 110a). In that report Dr. Dakin, who has seen plaintiff somewhat regularly over 20 years,[7] diagnosed plaintiff as suffering from (1) chronic infectious left kidney—possible polycystic kidney, (2) hypertension, and (3) arthritis (113a). Dr. Dakin noted that plaintiff has been under medical treatment since January 1952, and indicated that plaintiff's condition was "controlled by" daily medication (113a).[8]

---

**7.** At the hearing plaintiff testified that she first saw Dr. Dakin in 1949 (36a). Dr. Dakin's report of September 22, 1976, indicates she first treated plaintiff in 1959 (110a). When confronted with the inconsistency, plaintiff insisted that Dr. Dakin was wrong, and emphasized that she had visited Dr. Dakin in 1949 before plaintiff had the kidney operation (37a–38a).

Plaintiff also stated that, although Dr. DeSimone is her regular physician now and has been since 1954, she sees Dr. Dakin every year during Dr. DeSimone's annual, two-month vacation.

**8.** In the Treatment and Response section (113a) of the medical report, Dr. Dakin noted that (1) the chronic infectious left kidney condition was "controlled by Penicillin 400,000 cc qid daily," (2) the hypertension was "controlled by Diupres 500 I [once] daily—occasionally needs II [twice] daily," and (3) the arthritis was "controlled by Indocin 25 mgm tid" (113a). Dr. Dakin did not amplify the term "controlled by."

**9.** The administrative law judge made the following findings on May 8, 1978 (138a):

We have discussed portions of the record at some length because we wish to highlight the fact that plaintiff did present testimony and written evidence in support of her claim. In view of the variety and amount of evidence presented, these findings made by the administrative law judge in his decision of May 8, 1978, are not supported by substantial evidence:[9]

"3. The claimant's impairments, either singly or in combination have not been of such severity as to have prevented her from engaging in substantial gainful activity.

"4. The claimant was not prevented from engaging in substantial gainful activity, on or before December 31, 1953, the date for special earnings requirements were last met, for any continuous period of at least 12 months.

"5. The claimant was not under a 'disability' as defined in the Social Security Act, as amended, at any time on or before December 31, 1953."

42 U.S.C. § 405(g) provides that the reviewing court has the "power to enter . . . a judgment . . . modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to

---

"1. The claimant filed an application on March 30, 1976, and met the special earnings requirements in February, 1952, the alleged onset date, and continued to meet them until December 31, 1953, but not thereafter.

"2. The claimant is 53 years of age, completed the 10th grade in school and has worked at various jobs including punch press operator, packer in the glass industry, laborer for a railroad and dishwasher. . . ."

The May 8, 1978, decision was the second recommended decision denying plaintiff disability benefits. The decision was reached after the district court, on February 22, 1978, remanded this case to the Secretary of Health, Education and Welfare (HEW), and after the HEW Appeals Council, on March 17, 1978, remanded the case to the administrative law judge. The May 8, 1978, recommended decision was adopted by the HEW Appeals Council on June 30, 1978. The Appeals Council decision was the basis upon which the district court granted summary judgment in favor of the Secretary of HEW. See pp. 1064–1065, *supra*.

any fact, if supported by substantial evidence, shall be conclusive . . . . The court . . . may at any time, on good cause shown, order additional evidence to be taken before the Secretary . . . ." This court has held that " '[s]ubstantial evidence' means evidence which a reasoning mind would accept as sufficient to support a conclusion." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971). See also *Chicager v. Califano*, 574 F.2d 161, 164 (3d Cir. 1978). We do not think a reasoning mind would accept the evidence in this case (see particularly pages 1066–1067 above) to support findings 3–5 quoted above.

In *Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978), this court said:

"While an administrative law judge is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who testified before him. In this respect, we note the following observation by the Supreme Court:

[T]he decision whether to continue disability benefits will turn, in most cases, upon 'routine, standard, and unbiased medical reports by physician specialists,' *Richardson v. Perales*, 402 U.S. [389] 404, [91 S.Ct. 1420, at 1428, 28 L.Ed.2d 842], concerning a subject

whom they have personally examined. In *Richardson* the Court . . . emphasiz[ed] that while there may be 'professional disagreement with the medical conclusions,' the 'specter of questionable credibility and veracity is not present.' [19]

\*    \*    \*    \*    \*    \*

"19. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)."

In *Gober*, this court remanded the case for a new hearing to reconsider whether the administrative law judge had based his decision denying disability benefits on substantial evidence. A similar result was also reached in *Schaaf v. Matthews*, 574 F.2d 157 (3d Cir. 1978) (case remanded for a rehearing when opinion of administrative law judge did not explain the reasons for refusing to credit uncontradicted medical evidence).

Accordingly, we believe the administrative law judge should reconsider the evidence referred to earlier in this opinion,[10] including the lay testimony concerning plaintiff's condition, particularly her condition prior to January 1, 1954.[11] Further, we note that because he concluded that plaintiff was not "disabled" within the meaning of that term under Title II of the Social Security Act, the administrative law judge did not make any findings concerning the

---

10. See pp. 1066–1067, *supra.*

11. We believe the administrative law judge should feel free to question Dr. Markle on his three opinions, as discussed at 34a–37a of appendix and in notes 2 and 3 above, in light of the record before the Secretary and in light of issues A and B at 1065 above. Also, he is free to question Dr. Dakin and/or Dr. DeSimone if he considers this necessary to clarify their views on any issues presented by this case.

If a disability existed prior to January 1, 1954, later ceased, and then recurred, resulting in the present disability from which plaintiff apparently suffers (see 142a), recovery of benefits for any disability periods subsequent to 1975 would appear consistent with § 1–61–14 of the Office of Hearings and Appeals (Social Security Administration) Handbook. Although this issue has not been briefed, we are aware that the Sixth Circuit has held that an individu-

al who recovered from a prior disability is not entitled to disability benefits if he suffers a subsequent relapse unless he is still insured under the Social Security Act. *Henry v. Gardner*, 381 F.2d 191 (6th Cir. 1967), *cert. denied*, 389 U.S. 993, 88 S.Ct. 492, 19 L.Ed.2d 487 (1967), *rehearing denied*, 389 U.S. 1060, 88 S.Ct. 797, 19 L.Ed.2d 864 (1968). See also *Griffin v. Weinberger*, 407 F.Supp. 1388 (N.D. Ill.1975); *McGaha v. Ribicoff*, 262 F.Supp. 161 (D.Del.1966). *Cf. Reading v. Mathews*, 542 F.2d 993 (7th Civ. 1976); *American Casualty Co. v. Britton*, 97 U.S.App.D.C. 1, 227 F.2d 16 (D.C.Cir. 1955); *Cadwallader v. Sholl*, 89 U.S. App.D.C. 285, 196 F.2d 14 (D.C.Cir. 1952). Moreover, the finding that disability existed in 1949–1953 may require a recomputation of the date on which the earnings requirement was last met. *See Coulter v. Weinberger*, 527 F.2d 224, 230 (3d Cir. 1975).

existence of disability at the time plaintiff filed her application for disability benefits in 1976.[12] Nor, of course, did he make any findings concerning the following issues, which will have to be addressed if plaintiff was disabled within the terms of 42 U.S.C. § 423(d) prior to December 31, 1953: (1) if plaintiff was disabled in 1976, did the disability stem from the disability which she suffered prior to December 31, 1953?[13] (2) if plaintiff's 1976 disability stemmed from her 1953 disability, had it recurred or had it been continuously present since 1953?

For the reasons stated above, we will vacate the October 13, 1978, district court order and remand the case to that court for entry of an order remanding the case again to the Secretary of Health, Education & Welfare for further evaluation and consideration, in light of this opinion, of the "disability" of plaintiff within the terms of 42 U.S.C. § 423(d) from 1952 through December 31, 1953, and subsequent to March 30, 1975.[14]

Being of the view that the determination of no disability is not supported by substantial evidence, Judge Aldisert would reverse the district court judgment and remand the case to the district court with directions to enter an order reversing the decision of the Secretary and directing the payment of disability payments to plaintiff.

12. Reports from both Dr. Markle (142a) and Dr. DeSimone (114a) state that plaintiff was totally disabled in 1976. Dr. Dakin does not address this issue in her report (110a).

13. In his February 25, 1977, report (115a), Dr. Markle states that plaintiff's disability stems from the "polycystic condition of her left kidney which gives her some hypertension and some urinary tract infection from time to time that requires constant medical supervision." He also states that she had "generalized arthritis which is also progressive and in need of constant medical supervision." Dr. DeSimone's July 8, 1976, report (114a) states that the plaintiff's disability is due to urinary tract infections and hypertension. During the October 15, 1976, hearing before the administrative law judge, the plaintiff testified that she suffered from and was treated for hypertension in 1953 (32a–34a), that she suffered from arthritis in 1952 and 1953 (34a, 35a, 52a, 56a, 57a), and

that in the same period she suffered from and sought treatment for kidney problems (36a, 38a, 40a, 41a, 53a) and urinary problems (38a, 41a, 52a). Plaintiff's husband corroborated plaintiff's testimony generally, and specifically corroborated her description of the arthritic condition in her hands and ankles in 1952 and 1953. Thus, on the record as it exists now, all medical conditions listed as disabling by the doctors in 1976 existed in 1951–1953.

14. See 42 U.S.C. § 423(b), providing, *inter alia*:
"An individual who would have been entitled to a disability insurance benefit for any month had he filed application therefor before the end of such month shall be entitled to such benefit for such month if such application is filed before the end of the 12th month immediately succeeding such month."
Plaintiff filed her application for disability benefits on March 30, 1976.