791 F.2d 933
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NELLA D. JACKSON, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 85-1304
 United States Court of Appeals, Sixth Circuit.
 4/4/86
 
 REMANDED
 E.D.Mich.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 Before: LIVELY, Chief Judge; CONTIE, Circuit Judge; and WEICK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Nella D. Jackson appeals from the District Court's Order and Judgment accepting a United States Magistrate's recommendation and granting summary judgment in favor of the defendant Secretary of Health and Human Services in this case wherein plaintiff seeks disability insurance benefits under Section 216(i) and 223 of the Social Security Act (Act), 42 U.S.C. Secs. 416(i), 423.
 
 I.
 
 2
 Plaintiff filed her application for disability insurance benefits on April 12, 1982 alleging disability from November 17, 1981. She alleged disability from cervical muscle spasms and pain, lumbar pain and stiffness, pain and dysfunction in both hands, radiated pain into both legs and feet with numbness, dizziness, nervous problems, and high blood pressure.
 
 
 3
 Plaintiff's application was denied initially and again upon reconsideration. She then requested a hearing before an Administrative Law Judge (ALJ). The hearing was held on June 7, 1983, and the ALJ's decision issued on September 13, 1983. The ALJ determined that plaintiff was not entitled to a period of disability or to disability insurance benefits under the Act. The Appeals Council affirmed.
 
 
 4
 On April 9, 1984 plaintiff filed a Complaint in the district court seeking judicial review of the Secretary's decision denying her claim. The district court referred the case to a United States Magistrate pursuant to 28 U.S.C. Sec. 636(b) The Magistrate recommended that the Secretary's Motion for Summary Judgment be granted. Plaintiff filed timely objections to the Report and Recommendation. The district court accepted the Magistrate's recommendation and entered judgment affirming the Secretary's decision on February 14, 1985.
 
 
 5
 At the time of the hearing before the ALJ plaintiff was 49 years old and had a twelfth grade education supplemented with 39 credits of college course work. Plaintiff had been employed as a life insurance underwriter for 10 years, then in 1972 she took a job as a production worker at General Motors Corporation's Saginaw Chevrolet Manufacturing Plant. She worked there as a production worker until she was promoted to inspector in 1975.
 
 
 6
 Plaintiff had part of her left thumb amputated in an industrial accident in 1973 and had a number of subsequent corrective surgeries including neurological surgery for carpal tunnel syndrome in 1980. She returned to work in 1980 and continued at her job until November 17, 1981 when she was placed on disability leave. Plaintiff attempted to return to work twice thereafter before being placed on disability leave in January and March of 1982.
 
 
 7
 In support of her claim of disability plaintiff presented evidence of the surgical amputation and subsequent corrective surgeries, carpal tunnel surgery, clinical evidence of lumbar and/or cervical muscle spasm, EMG evidence of nerve root irritation, myelographic evidence of moderate spondylitic changes of the lumbosacral spine, deposition testimony of her treating physician and reports of three other psychiatrists that she is psychiatrically disabled from performing any gainful work.
 
 
 8
 Plaintiff alleged that her hand injury and subsequent surgeries thereon had a profound impact on her self-image and that now she is emotionally and psychologically unable to work. She testified that she cannot lift any weight, no longer has any hobbies, does not belong to any clubs, and spends her days in home traction, taking medication, and lying down.
 
 
 9
 One doctor's report on which plaintiff relies included a statement that there is no reason to believe plaintiff is malingering and no reason to feel her symptoms are psychosomatic. Plaintiff's treating physician testified upon being deposed that he had never found plaintiff to exaggerate. Plaintiff's husband testified that he believed she was telling the truth with respect to the amount of plain she was suffering.
 
 
 10
 Medical evidence which the Secretary relied upon consisted of the following. A discharge summary from the Henry Ford Hospital dated January 28, 1982 instructed plaintiff to return to work. An electromyographic exam report dated March 19, 1982 concluded that plaintiff was normal. A report of x-ray findings of plaintiff's lumbar spine concluded there were no destructive abnormalties present. A consultative neuropsychologist's report stated: '[T]here are also indications that the pain may be used as a 'haven' in an effort to escape the pressures and stresses of everyday life which she may have problems coping with . . .. [I]t appears that her complaint may even represent somatic delusions.'
 
 
 11
 One examing neurosurgeon's report stated: '[Plaintiff's] problem is perhaps exacerbated because of the separation of her and her husband.'
 
 
 12
 A myelogram from the Henry Ford Hospital dated January 28, 1982 concluded that plaintiff had no abnormality in the lumber or thoracic regions. A letter from an examining physician to the Michigan Disability Determination Service dated July 13, 1983 stated: 'I do not find objective evidence of organic neurological disease. Patient should be able to perform some type of gainful employment if emotionally motivated.'
 
 
 13
 Plaintiff's treating physician testified upon being deposed that if she were to work she should not be sitting down for over an hour at a stretch. He also testified she could lift approximately ten pounds and that if she were required to bend and twist occasionally (but not on a regular basis) that would be okay. Finally, he testified that if she had a job where she could sit or stand at her option that too would be all right.
 
 II.
 
 14
 We must determine whether there is substantial evidence in the record, taken as a whole, to support the Secretary's decision to deny the plaintiff's application for Social Security disability benefits. A decision of the Secretary is conclusive if supported by substantial evidence. Wokojance v. Weinberger, 513 F.2d 210 (6th Cir. 1975), cert. denied, 423 U.S. 856 (1975); 42 U.S.C. Sec. 405(g).
 
 
 15
 'Substantial evidence' is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Richardson v. Perales, 402 U.S. 389, 401 (1971); Combs v. Gardner, 382 F.2d 949 (6th Cir. 1967).
 
 
 16
 "Substantial evidence is not simply some evidence or even a great deal of evidence. Rather, the 'substantiality of evidence must take into account whatever in the record fairly detracts from its weight." [citations omitted] . . .. 'We may not focus and base our decision entirely on a single piece of evidence, and disregard other pertinent evidence." [citations omitted]. Garner v. Heckler, 745 F.2d 383, 386 (6th Cir. 1984).
 
 
 17
 Where there is a conflict in the medical evidence it is the Secretary's duty to weigh the evidence and resolve any such conflict. Sample v. Schweiker, 694 F.2d 639 (9th Cir. 1982); Janka v. Secretary of Health, Education & Welfare, 589 F.2d 365 (8th Cir. 1978).
 
 
 18
 In reviewing an administrative decision, it is not the function of the court to appraise the evidence de novo, Halsey v. Richardson, 441 F.2d 1230, 1236 (6th Cir. 1971), or to decide questions of credibility. Wokojance v. Weinberger, supra, at 212.
 
 
 19
 Title 20 C.F.R. Sec. 404.1520 sets forth a sequential process for evaluating disability claims. The first step is to determine if the claimant is working. If so, and if the claimant is doing substantial gainful activity a finding that she is not disabled is mandated. Since plaintiff was not working at the time of the hearing the ALJ went on to the second step in the process, a determination of whether plaintiff had a severe impairment. A 'severe impairment' is one which 'significantly limits your physical or mental ability to do basic work activities.' 20 C.F.R. Sec. 404.1520(c).
 
 Examples of basic work activities include:
 
 20
 (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;
 
 
 21
 (2) Capacities for seeing, hearing, and speaking;
 
 
 22
 (3) Understanding, carrying out, and remembering simple instructions;
 
 
 23
 (4) Use of judgment;
 
 
 24
 (5) Responding appropriately to supervision, co-workers and usual work situations; and
 
 
 25
 (6) Dealing with changes in routine work setting.
 
 
 26
 20 C.F.R. Sec. 404.1521(b).
 
 
 27
 With respect to plaintiff's alleged physical disabilities the evidence plaintiff relied on was tentative at best and controverted by competent medical evidence establishing that she did not have a severe impairment or an impairment described in the Listing of Impairments. Only plaintiff's ability to perform the 'basic work activities' listed in 20 C.F.R. Sec. 404.1521(b)(1) was called into question, and plaintiff's own treating physician's deposition testimony indicated that she could perform such activities. Accordingly, we believe that there is substantial evidence in the record, taken as a whole, to support a decision that plaintiff is not disabled on account of her alleged physical disabilities
 
 
 28
 However, we do not agree with the ALJ's finding 'that the claimant does not have a severe mental impairment either.' In fact, we believe the evidence does establish that plaintiff's phychiatric condition does constitute a 'severe impairment' as defined in the social security regulations. 20 C.F.R. Sec. 404.1520-.1521.
 
 
 29
 Although a neurologist who examined plaintiff for the Secretary reported no objective evidence of neurological disease and stated that plaintiff 'should be able to perform some type of gainful employment if emotionally motivated,' three psychiatrists' reports and deposition testimony of plaintiff's treating physician indicated that she is psychiatrically disabled from performing any type of job. The Secretary's neurologist diagnosed plaintiff as suffering from Severe Anxiety Neurosis. Plaintiff's severe chronic neurotic depression, as diagnosed by the psychiatrists, combined with the side effects of her prescribed medications, significantly limit her physical or mental abilities to perform the basic work activities listed in 20 C.F.R. Sec. 404.1521(b)(2)(6). Despite this evidence, the ALJ improperly based his decision that plaintiff is not mentally disabled on his own opinion that her problem is really her own malingering.
 
 
 30
 '[An administrative law judge] is not free to set his own expertise against that of a physician who testified before him.' Golofski v. Califano, 607 F.2d 1063, 1068 (3rd Cir. 1979). Also:
 
 
 31
 While an expert medical opinion as to disability to engage in substantial gainful employment is admissible for consideration by the Hearing Examiner, and not, in itself, binding upon him, nevertheless, if such opinion is not controverted by substantial evidence to the contrary, the Hearing Examiner's decision adverse to such expert medical opinion, must be set aside. Teeter v. Flemming, 270 F.2d 871, 77 A.L.R. 2d 636 (C.A. 7).
 
 
 32
 Colwell v. Gardner, 386 F.2d 56, 72 (6th Cir. 1967) (emphasis is original).
 
 
 33
 We do not believe that the statement by the Secretary's neurologist that plaintiff 'should be able to perform some type of gainful employment if emotionally motivated' is such substantial evidence as to controvert the opinions of four medical experts that plaintiff is psychiatrically disabled.
 
 
 34
 Accordingly, this case is REMANDED to the district court with instructions to remand to the Secretary for entry of an award of benefits.