**Eugene M. HARRIS, Petitioner,**

v.

**DISTRICT OF COLUMBIA OFFICE OF WORKER'S COMPENSATION (DOES), Respondent,**

**and**

**Bell Atlantic–D.C., Intervenor.**

**No. 94–AA–1012.**

District of Columbia Court of Appeals.

Argued May 2, 1995.
Decided June 29, 1995.

Richard C. Strasser, Washington, DC, for petitioner.

Garland Pinkston, Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, filed a statement in lieu of brief, for respondent.

Donald P. Maiberger, Washington, DC, for intervenor.

Before STEADMAN and SCHWELB, Associate Judges, and NEWMAN, Senior Judge.

SCHWELB, Associate Judge:

Eugene M. Harris has asked this court to review a decision of a Hearing and Appeals Examiner of the Department of Employment Services (DOES or the agency) holding that an injury which Harris allegedly suffered after the effective date of the Worker's Compensation Act of 1979, D.C.Code §§ 36–301, *et seq.* (1993) (the WCA or 1979 Act), was not a new injury but merely a "recurrence" of a pre-Act injury, and therefore non-compensa-

ble under the WCA.[1] We conclude, on the basis of the examiner's evidentiary findings, that Harris suffered a post-Act aggravation of a pre-existing injury, and that such aggravation is compensable under the 1979 Act. Accordingly, we reverse the decision under review and remand the case to the agency for further proceedings.

## I.

### THE AGENCY PROCEEDINGS[2]

This case is of somewhat ancient vintage.[3] Harris has been employed by intervenor Bell Atlantic and its predecessor, C & P Telephone Co., since 1969. In March 1977, while Harris was on company business, the automobile in which he was riding was "rear-ended" by another vehicle, and Harris suffered an acute sprain of the lumbar spine. He was "physically restricted from the performance of his usual employment duties" for approximately six months.

Upon his return to work in the fall of 1977, Harris was placed in a "medically restricted capacity, *i.e.*, light duty." He was not allowed to drive a company car, climb poles or ladders, pull cable, or engage in lifting. Although Harris ceased active medical treatment in or about 1979, his lumbar condition became chronic. With some relatively minor changes, the restrictions on Harris' activities remained in effect for more than five years following his return to work.

In 1983, Harris was employed in a supervisory capacity as an engineer. The examiner described this position as "sedentary in nature." In August of that year, C & P's employees went on strike, and Harris was reassigned "to perform the non-sedentary function of a frame attendant." The examiner found that Harris was required, among other things,

to lift and carry test sets weighing from ten (10) to forty pounds (40 lbs.); move and climb ladders; pull jumper wire and cables from reels; and, use of a soldering iron. I find that claimant performed said functions for the month of August 1983, and that claimant began to suffer from increasing lumbar complaints.

After the strike ended in September 1983, Harris returned to his "sedentary supervisory position." The examiner found, however, that "claimant's lumbar symptoms, which had begun in August, began to increase in intensity." Further, according to the examiner,

claimant has credibly testified that from September 1983 through March 1985 he attempted self-medication for back pain, and that thereafter, he sought medical intervention for pain in his lumbo-sacral area. Employer has introduced no evidence to contradict claimant's credible testimony that he began to experience consistent symptoms of pain in his low back in or about August/September 1983, nor any evidence that claimant does not presently suffer from chronic lumbral strain, and therefore, *it was found that claimant sustained an injury in or about said period.*

(Emphasis added).

Harris did not seek medical assistance for the 1983 injury until March 1985. In 1986, he filed a notice of accidental injury with the Office of Workers' Compensation. *Harris II*, 648 A.2d at 673. In 1988, he filed a claim for benefits with DOES. *Harris I*, 592 A.2d at 1016. There was extensive litigation before the agency and in this court regarding the timeliness of his claims. *Harris II*, 648 A.2d at 673; *Harris I*, 592 A.2d at 1015–19. The issue was ultimately resolved in his favor. *Harris II*, 648 A.2d at 673–74.

On May 20, 1994, the examiner issued a Final Compensation Order. Notwithstanding his evidentiary findings, summarized

---

**1.** That decision became final for purposes of judicial review when the Director of the Agency failed to rule on Harris' internal appeal within forty-five days. *See* D.C.Code § 36–322(b)(2) (1993).

**2.** The examiner made extensive evidentiary findings. Our factual recitation is based on these

findings and, in some minor respects, on uncontroverted documentary evidence.

**3.** For earlier stages of the litigation, *see Harris v. District of Columbia Dep't of Employment Servs.*, 648 A.2d 672 (D.C.1994) (per curiam) (*Harris II*), *vacating* 592 A.2d 1014 (D.C.1991) (*Harris I*).

above, and in spite of his recognition that "the aggravation of a pre-existing condition is an 'injury' under the Act," the examiner concluded that Harris was not entitled to any recovery. According to the examiner, Harris had suffered from chronic lumbar strain since 1977, and

> [c]laimant's physicians have not opined an intervening causative factor in claimant's present infirmity, in the form of claimant's August 1983 employment-related activities, merely that his 1977 injury has been, once again, rendered symptomatic. Therefore, it has been found that claimant's injury of in or about August 1983 was a recurrence of his March 1977 acute lumbar strain.

The examiner concluded on the basis of this reasoning that Harris' claim "is not amenable to adjudication pursuant to the instant Act."[4]

Harris filed an internal appeal to the Director of DOES. The Director took no action on that appeal within the time prescribed by statute, D.C.Code § 36–322(b)(2) (1993), and the examiner's decision became the decision of the agency. *Id.* Harris filed a timely petition for review by this court.

## II.

## LEGAL DISCUSSION

*A. The Scope of Review.*

■ The scope of our review of the agency's orders is defined by the now familiar "substantial evidence" standard. Under the District's Administrative Procedure Act, D.C.Code § 1–1509(e) (1987), we inquire

> (1) whether the agency has made a finding of fact on each material contested issue of fact; (2) whether substantial evidence of record supports each finding; and (3) whether conclusions legally sufficient to support the decision flow rationally from the findings.

*Cruz v. District of Columbia Dep't of Employment Servs.,* 633 A.2d 66, 70 (D.C.1993) (citations omitted).

■ Our review of the agency's legal rulings is *de novo,* for "[i]t is emphatically the province and duty of the judicial department to say what the law is," *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803), and the judiciary is the final authority on issues of statutory construction. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2782 n. 9, 81 L.Ed.2d 694 (1984). Nevertheless, where the meaning of a statutory language is not clear on its face, the court will accord considerable weight to its construction by the agency responsible for administering the statute. *Id.* at 844, 104 S.Ct. at 2782; *Winchester Van Buren Tenants Ass'n v. District of Columbia Rental Hous. Comm'n,* 550 A.2d 51, 55 (D.C.1988).

The principle that the executive construction of a statute is to be accorded weight applies "especially if such construction has been made by the highest officers in the executive department of the government." *See* 82 C.J.S. *Statutes,* § 359, at 761–64 (1953 & Supp.1994). In the present case, the interpretation of the WCA which we have been asked to review is that of the examiner; the Director upheld it by failing to act. We conclude that this circumstance reduces in some measure the deference which we should accord to the agency's construction. *Cf. Commonwealth v. Berlo Vending Co.,* 415 Pa. 101, 202 A.2d 94, 97 n. 4 (1964).

*B. Compensability.*

■ Under the WCA of 1979, "[e]very employer subject to this chapter shall be liable for compensation for injury or death without regard to fault as a cause of injury or death." D.C.Code § 36–303(b) (1993). Prior to July 26, 1982, which was the effective date of the Act, employers in the District were subject to the provisions of the federal LHWCA, 33 U.S.C. §§ 901, *et seq.,* which is administered by the Secretary of Labor. Injuries incurred before July 26, 1982 continue to be governed by the LHWCA. *Railco Multi–Constr. Co. v. Gardner,* 564 A.2d 1167, 1168 & n. 4 (D.C.1989); *Gustafson, supra,* 266 U.S.App.

---

4. The examiner cited several decisions holding that injuries incurred prior to the effective date of the WCA continue to be governed by the Longshore and Harbor Workers' Compensation

Act, 33 U.S.C. § 901 *et seq.* (the LHWCA). *See, e.g., Gustafson v. Int'l Progress Enters.,* 266 U.S.App.D.C. 25, 26 n. 1, 832 F.2d 637, 638 n. 1 (1987).

D.C. at 26 n. 1, 832 F.2d at 638 n. 1. The basic question in this case is whether, in 1983, Harris suffered an injury within the meaning of the WCA.

▉ The 1979 Act is modeled in substantial part on the LHWCA which it replaced. *Railco, supra,* 564 A.2d at 1172. Like its predecessor, it contains a presumption of compensability,[5] which is designed to effect the humanitarian purposes of the Act. *Spartin v. District of Columbia Dep't of Employment Servs.,* 584 A.2d 564, 572 (D.C.1990) (citations omitted); *Wheatley v. Adler,* 132 U.S.App.D.C. 177, 182, 407 F.2d 307, 312 (1968); *see also O'Keeffe v. Smith, Hinchman & Grylls Assoc.,* 380 U.S. 359, 362, 85 S.Ct. 1012, 1014–15, 13 L.Ed.2d 895 (1965).

▉ Like other worker's compensation statutes, the Act is to be "liberally construed for the benefit of the employee." *Railco, supra,* 564 A.2d at 1169; *see also J.V. Vozzolo, Inc. v. Britton,* 126 U.S.App.D.C. 259, 262, 377 F.2d 144, 147 (1967). "[D]oubts, including the factual, are to be resolved [in the employee's favor.]" *Vozzolo,* 126 U.S.App. D.C. at 262, 377 F.2d at 147.

As the court explained in *Vozzolo,*

> [b]enefits under the Act are not limited to employees who happen to enjoy good health; rather, employers accept with their employees the frailties that predispose them to bodily hurt. [T]he fact that an employee is diseased does not bar his right to recover for accidental injury notwithstanding, except for such diseased condition, the injury would not have occurred, and harm resulting from aggravation by the employment of a pre-existing infirmity, it has many times been decided, is injury within the meaning of the Act.

*Id.* at 262–63, 377 F.2d at 147–48 (citations and internal quotation marks omitted); *accord, Spartin, supra,* 584 A.2d at 570.

▉ In light of the examiner's evidentiary findings, the foregoing principles dictate the result of this case. The examiner specifically found that in August 1983, after Harris was removed from his sedentary job and required to work instead as a "frame attendant," his lumbar symptoms increased in intensity. Rejecting C & P's contention to the contrary, the examiner further found that Harris "sustained an injury in or about that period." Although the examiner did not explicitly state that this injury was an aggravation of a pre-existing condition, it is difficult to understand how it could reasonably be described as anything else.

▉ According to the examiner, Harris suffered a "recurrence," which was not compensable. This is not a case, however, in which the "recurrence" was "the result of the natural progression of the [condition], unaffected by any intervening work-connected cause." *See, e.g., American Casualty Co. of Reading, Pa. v. Britton,* 97 U.S.App.D.C. 1, 3, 227 F.2d 16, 18 (1955). If the "recurrence" resulted from a work-related trauma or event—and the examiner found that it did— then it constituted a compensable aggravation of a prior condition. *Id.; see also Kelaita v. Director, OWCP,* 799 F.2d 1308, 1311 (9th Cir.1986); *DiSabatino & Sons, Inc. v. Facciolo,* 306 A.2d 716, 719 (Del.1973); 4 ARTHUR LARSON, WORKMEN'S COMPENSATION LAW §§ 95.21–95.22, at 17–126—17–139 (1994).[6] Even in the portion of his discussion most favorable to C & P—his comment that "claimant's physicians have not opined an intervening causative factor in claimant's present condition in the form of claimant's August 1983 employment-related activities"—the examiner found that, in 1983, Harris' injury was once again "rendered symptomatic." This is a somewhat technical way of saying that, as a result of Harris' 1983 heavy duty, his back hurt more than it did before— in other words, that his injury was aggravated.

---

5. In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of evidence to the contrary

    (1) That the claim comes within the provisions of this chapter....

D.C.Code § 36–321 (1993).

6. As this treatise points out, the distinctions among new injuries, aggravations, and recurrences have been typically explored in cases where a worker has suffered two or more episodes of disability with an intervening change of employers or change of insurance carriers by the same employer. *Id.* § 95.11.

The present case is similar to *In re Compensation of Elliott*, 54 Or.App. 980, 636 P.2d 1020 (1981). In 1974, Elliott, who was then employed by Stayton, suffered a herniated disc in his lower back while lifting a wheel and tire. He was hospitalized several times and did not return to work until 1978. By this time, Stayton's business had been taken over by Clayton.

In 1979, following a period of relative stability, Elliott tripped and fell. He suffered immediate pain and was thereafter hospitalized on three occasions. The Worker's Compensation Board ruled that Elliott had suffered a compensable injury for which Clayton, the second employer, was liable. The Court of Appeals affirmed, holding that although the 1979 incident "injured the same area of claimant's back, and . . . the nature of the pain was the same, it was increased in severity and duration by the trauma . . .[,] resulted in an increase in disability, [and thus] warrants a conclusion that a new injury occurred." *Id.* at 1021.[7] This is essentially what happened in the present case. *See also Fisher v. K Mart Corp.*, 174 Mich.App. 669, 436 N.W.2d 434, 437 (1989) (injured employee's return to work following an earlier accident suggests that he was not suffering from a continuing disability and that new condition was the result of a work-related aggravation of his prior injury).

The examiner cited *Gustafson, supra,* and *Crum v. General Adjustment Bureau*, 238 U.S.App.D.C. 80, 738 F.2d 474 (1984), in support of his conclusion that Harris' injury was not compensable under the Act, but neither case is helpful to the employer's cause. In *Gustafson*, as we have seen, the court noted that the LHWCA continues to apply to pre-WCA injuries, 266 U.S.App.D.C. at 26 n. 1, 832 F.2d at 638 n. 1, but the case did not involve a post-Act aggravation of a pre-Act injury, and the court's opinion contains no discussion of the issue presented in this case. In *Crum*, the court also recognized that the LHWCA continues to apply to pre-WCA injuries, 238 U.S.App.D.C. at 81 n. 2, 738 F.2d at 475 n. 2, but in that case all of the relevant events took place well before the effective date of the 1979 Act. In addition, the decision in *Crum* strongly supports Harris' substantive contentions, for the court held that work-related angina which aggravated Crum's pre-existing chest pain constituted a compensable injury. *Id.* at 84, 738 F.2d at 478. The court rejected the employer's contention that the injury should not be compensable because the angina was merely a manifestation or exacerbation of a pre-existing disease which the employer did not cause. *Id.* at 83–84, 738 F.2d at 477–78.[8]

The employer contends that the examiner's finding that Harris' 1983 injury was a "recurrence" is supported by the medical evidence,[9]

7. The court went on to state that
   if the second incident contributes independently to the injury, the second insurer is solely liable, even if the injury would have been much less severe in the absence of the prior condition, and even if the prior injury contributed the major part to the final condition. . . .
   *Id.* (quoting 4 Arthur Larson, Workmen's Compensation Law § 95.12 (1976)).

8. The examiner also cited *Keener v. Washington Metropolitan Area Transit Auth.*, 255 U.S.App.D.C. 148, 800 F.2d 1173 (1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987), but that case did not present any issue similar to the one now before us.

9. The medical testimony on which Bell Atlantic relies, when carefully analyzed, lends little support to its thesis. Attached to Bell Atlantic's brief are excerpts from the reports of several physicians who examined Harris. One of them, Louis B. Levitt, M.D. described the change in Harris' responsibilities in 1983 and noted that "[w]ith this change in job responsibilities the patient had an increase in his symptoms of neck and back pain." Dr. Anita Herbert, who examined Harris in August 1983, reported that "although [Harris] did not report any trauma, he reported that he experienced recent exacerbations of those low back pains. On examination, there was a mild decrease in range of motion of his back." These reports are consistent with the examiner's basic evidentiary finding—the transfer of Harris from light duty to heavy duty resulted in the aggravation of his prior condition.

   The physicians' reports, and Harris' failure to seek medical assistance until 1985 for his 1983 injuries, might well support a finding that the aggravation of his prior condition was not extreme and that the 1983 injury was not severe. These considerations, while obviously relevant to the *amount* of compensation to which Harris is entitled, do not affect our conclusion that whatever injury he did suffer is compensable under the WCA.

and that this court should sustain it under the "substantial evidence" rule. This argument, however, avoids the critical question whether that "recurrence" was caused by Harris' work-related activity. The examiner found that it was, and his holding that the injury was not compensable is more in the nature of a legal conclusion than it is a finding of fact. Even if we were to treat the examiner's characterization of the injury as a "recurrence" as a finding of ultimate fact, we would be required to reject it as inconsistent with his own findings of evidentiary fact and with the controlling law. *See, e.g., In re L.L.,* 653 A.2d 873, 880, 884–85 (D.C.1995) (rejecting trial judge's ultimate findings as irreconcilable with the judge's own evidentiary findings).

Accordingly, we conclude that the examiner's findings compel the conclusion that Harris suffered a compensable injury in 1983. This conclusion is further bolstered by the statutory presumption of compensability and by the principles of liberal construction which apply to the humanitarian legislation we are called upon to construe. Accordingly, the examiner's decision is vacated, and the case is remanded to the Director of DOES for further proceedings consistent with this opinion.

*So ordered.*