**Bret S. HART, Petitioner,**

**v.**

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,**

**World Championship Wrestling, and Cambridge Integrated Services Group, Inc., Intervenors.**

**No. 03–AA–37.**

District of Columbia Court of Appeals.

Argued Dec. 4, 2003.
Decided March 4, 2004.

---

Benjamin T. Boscolo, Greenbelt, MD, for petitioner.

Clifton M. Mount, for intervenors.

Arabella W. Teal, Interim Corporation Counsel at the time, and Charles L. Reischel, then Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Before STEADMAN, FARRELL and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge:

Bret S. Hart is a professional wrestler who was injured in a match in the District of Columbia. The Director of the Department of Employment Services (DOES) denied Hart's ensuing claim for workers' compensation benefits because he worked only "temporarily or intermittently" in the District and his claim was governed by the law of another state. *See* D.C.Code § 32–1503(a–3) (2001). Hart asks us to reverse this determination. He argues that despite his physical absence from the District, he maintained a continuous "economic and virtual presence" here via appearances on television and sales of merchandise that was sufficient to bring him within the jurisdiction of the District of Columbia Workers' Compensation Act.

Hart's contention, though it is imaginatively and vigorously pressed, is unavailing. We defer to the Director's reasonable interpretation of the statutory language in question as referring to the duration and frequency of an employee's actual physical presence in the District of Columbia rather than the employee's virtual presence, and therefore we affirm the denial of Hart's claim.

## I.

In 1997, Bret "The Hitman" Hart signed a five-year contract with World Championship Wrestling ("WCW"). Hart was a res-

ident of Calgary, Canada. He entered into the contract in Georgia, where WCW has its headquarters, and agreed that disputes under the contract would be governed by and resolved under the law of that state. Pursuant to their agreement, WCW furnished Hart with insurance coverage under Georgia's workers' compensation law. It is undisputed that this insurance covered Hart's employment by WCW while he was in the District of Columbia.

Hart's contractual obligations included participating in wrestling matches and publicity events in arenas and other venues around the country. The WCW retained all rights to sell admission tickets for events in which Hart appeared; to create, distribute, and broadcast event-related programs in the mass media; and to use, distribute, and license all promotional merchandising associated with Hart. WCW also retained ownership of all work product and intellectual property derived from the relationship.

In December 1999, Hart performed in a wrestling match at the MCI Center in Washington, D.C. During this performance, Hart sustained a head injury that ultimately ended his wrestling career. As his injury was disabling, Hart sought workers' compensation benefits under District of Columbia law. WCW opposed Hart's claim on the ground, *inter alia,* that it was exempted from the provisions of the District of Columbia Workers' Compensation Act by D.C.Code § 32–1503(a–3).[1] Since Hart and WCW had entered into

their contract in Georgia, neither of them was a District of Columbia resident, and WCW had furnished Hart with workers' compensation insurance coverage under Georgia law, the applicability of the (a–3) exemption turned on whether Hart was only "temporarily or intermittently within the District of Columbia, doing work for" WCW when he sustained his injury.

It seemed that this last condition was met, for Hart had seldom worked in the District of Columbia; in fact, his performance at the MCI Center was his only personal appearance in the District that year. Hart contended, however, that his physical absence from the District was not dispositive because he had maintained a continuous "economic and virtual presence" here through weekly television broadcasts of his wrestling bouts and daily sales of his "Hitman" action figure dolls and other personal memorabilia. According to Hart, the economic use of his name and image had generated not inconsiderable licensing fee and sales tax revenues for the District.

Neither the DOES administrative law judge nor the Director was persuaded by Hart's admittedly novel argument. The ALJ concluded that Hart's asserted "economic and virtual presence" in the District of Columbia did not confer jurisdiction over his claim because subsection (a–3) of D.C.Code § 32–1503 "only contemplates physical presence in the District." Affirming the ALJ's denial of benefits, the Di-

---

1. D.C.Code § 32–1503(a–3) provides as follows:

   (a–3): An employee and his employer who are not residents of the District of Columbia and whose contract of hire is entered into in another state shall be exempted from the provisions of this chapter while such employee is temporarily or intermittently within the District of Columbia doing work for such nonresident employer, if such employer has furnished workers' compensation insurance coverage under the workers' compensation or similar laws of such other state, so as to cover such employee's employment while in the District of Columbia. The benefits under this chapter or similar laws of such other state shall be the exclusive remedy against such employer for any injury, whether resulting in death or not, received by such employee while working for such employer in the District of Columbia.

rector reasoned that the statute requires "actual performance within the District of Columbia substantially more than in another state," and that subsection (a–3) therefore may preclude coverage if the claimant "physically perform[ed] his work duties within the District of Columbia" on but a single occasion.

## II.

▆▆▆▆ The question before us is whether the Director properly construed the phrase "while such employee is temporarily or intermittently within the District of Columbia doing work for such nonresident employer" in D.C.Code § 32–1503(a–3) to refer to the employee's actual physical presence in the District. While this court is "the final authority" on questions of statutory construction, *Harris v. District of Columbia Office of Worker's Compensation (DOES)*, 660 A.2d 404, 407 (D.C.1995), and our review is *de novo*, we will defer to the Director's interpretation of the Workers' Compensation Act if his interpretation is reasonable in light of the Act's language, its legislative history, and judicial precedent. *See Wash. Metro. Transit Auth. v. District of Columbia Dep't of Employment Servs.*, 825 A.2d 292, 294 (D.C.2003).

That policy of deference is dispositive here. The language of subsection (a–3) supports the Director's view; "doing work" within the District of Columbia surely implies the employee's actual physical presence here as opposed to the mere presence of the employee's image or merchandise. There is nothing unreasonable about that implication, which comports with the evident purpose of (a–3) to preclude a claimant's unnecessary resort to coverage under the District's workers' compensation law when the predominant interest in covering the claim lies with

another jurisdiction. Consistent with that purpose, the hearing examiner and the Director deemed Hart's "economic and virtual presence" interpretation objectionable partly because adopting it likely would "augur a floodgate" of dubious litigation under the District's law.[2] Hart points to nothing in the legislative history of the Workers' Compensation Act, and we are aware of nothing there, that would undermine the Director's construction of subsection (a–3) or support Hart's own. The Director's focus on the extent of the claimant's actual physical presence at work in the District of Columbia is consistent as well with past precedent construing (a–3). *See Adjei v. District of Columbia Dep't of Employment Servs.*, 817 A.2d 179, 180 (D.C.2003) (upholding decision that construed "intermittently" as "qualify[ing] and quantify[ing] the actual time in the District of Columbia as opposed to describing claimant's employment as a whole").

With some justification, Hart finds fault with how the ALJ, and to a lesser degree the Director, articulated their rationales. In addition to relying on the language of subsection (a–3), the examiner cited *Lee v. District of Columbia Dep't of Employment Servs.*, 509 A.2d 100 (D.C.1986), for the proposition that "the employment relationship must have contacts more substantial with the District than in any other place [and] must be primarily and predominantly located in the District." For his part, the Director used similar language (though without citing *Lee*) when he stated that the Act required "actual performance within the District of Columbia *substantially more than in another state*." (Emphasis added.) We agree that these statements were, at best, imprecise, for they hark back to the former requirement of the

---

**2.** Hart's objection to this statement as being unsupported by substantial evidence in the record is not well-taken, for it is in the nature

of a prognostication only and not a finding of historical fact.

Workers' Compensation Act that·a claimant's employment be "principally localized" in the District of Columbia regardless of the situs of the injury. *See* D.C.Code· § 36–303(a)(1–3) (1981). The Council eliminated that requirement in 1991. *See Adjei*, 817 A.2d at 182. Nevertheless, the questionable language employed by the ALJ and the Director does not require us to remand the case for renewed consideration—for on the fundamental point, that the touchstone under subsection (a–3) is the employee's actual as opposed to "virtual" presence in the District of Columbia, there is "no reasonable likelihood that a remand for reconsideration in light of the proper standard would lead the examiner to a different result." *Killingham v. District of Columbia Rental Housing Comm'n*, 810 A.2d 925, 927 (D.C.2002).

The decision of the Director to deny Hart's claim for worker's compensation benefits is affirmed.

